UNITED STATES, Appellee

v

WILLIAM K. TAYLOR, Specialist Second Class,
U. S. Army, Appellant

9 USCMA 596, 26 CMR 376

597

Decided September 19, 1958

*Major Edward Fenig* argued the cause for Appellant, Accused.

*First Lieutenant Chester F. Relyea* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel John G. Lee* and *Major Thomas J. Nichols.*

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused pleaded guilty to, and was convicted of, two specifications in violation of Article 92, Uniform Code of Military Justice, 10 USC § 892—one for violating a lawful regulation by purchasing cigarettes from a Japan Central Exchange Branch in excess of an amount required for his own personal use—and the other for contravening the same regulation by reselling the cigarettes to a Korean national; and nine specifications in violation of Article 123 of the Code, supra, 10 USC § 923, eight of which alleged forgery of ration books and one the uttering of such a forged instrument.

Counsel argued two issues before this Court: (1) whether accused was subject to the regulation set out in Charge I, viz., paragraph 9f, Circular 141, Headquarters, United States Armed Forces, Far East, dated August 5, 1954 (as extended in date by a later regulation); and (2) whether ration books may be the subject matter of forgery.

Both issues are answered in the affirmative. As to the first, we recently had occasion in United States v Curtin, 9 USCMA 427, 26 CMR 207, to determine the applicability to individuals of the same paragraph of the above regulation. For reasons set forth at length in that opinion, we held that paragraph 9f, Circular 141, AFFE, imposed valid restrictions on the conduct of individual purchasers of exchange merchandise and that a violation of those restrictions is cognizable as an offense under Article 92 of the Code, supra.

The second issue was raised, but not decided, in the recent cases of United States v Dozier, 9 USCMA 443, 26 CMR 223, and United States v Smart, 9 USCMA 451, 26 CMR 231.

In the instant case, the accused purchased eight apparently stolen ration books from a Korean shopkeeper who, using the information found on accused's valid ration book, proceeded to fill out the books in accused's name. The accused, after receiving the books, signed the name of Captain Douglas N. Hunt as the issuing officer. This was done without the knowledge or authority of said Captain Hunt. The cigarette coupons from each of the eight ration books were used to purchase excessive quantities of cigarettes for resale to the Korean.

Article 123, Uniform Code of Military Justice, supra, defines forgery as follows:

"Any person subject to this chapter who, with intent to defraud—

(1) falsely makes or alters any signature to, or any part of, any writing which would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice; or

**598**

(2) utters, offers, issues, or transfers such a writing, known by him to be so made or altered; is guilty of forgery and shall be punished as a court-martial may direct."

Ration books may be the subject of forgery. Carney v United States, 163 F2d 784 (CA 9th Cir) (1947), cert den 332 US 824, 68 S Ct 165, 92 L ed 400; United States v Serpico, 148 F2d 95 (CA2d Cir) (1945); United States v Mullin, 51 F Supp 785 (ED Mo) (1943); United States v Raskin, 52 F Supp 343 (ED NY) (1943).

Arguments of counsel raise two contentions as to the ration books in the instant case. The first is that the intent to defraud "another" must herein be limited to an intent to defraud Captain Hunt, the person whose signature was forged, and further that the name of the victim must be set forth in the specification.

Inasmuch as the United States has been considered a "person," Far East Conference v United States, 342 US 570, 72 S Ct 492, 96 L ed 576, reversing 94 F Supp 900 (TD NJ) (1951); Sherwood v United States, 112 F2d 587 (CA 2d Cir) (1940), it would certainly seem to be "another" within the meaning of the statute.

In Moore v Commonwealth, 92 Ky 630, 18 SW 833 (1892), the forgery statute provided:

" 'If any person shall forge or counterfeit any writing whatever, whereby fraudulently to obtain the possession of or to deprive *another* of any money or property, or cause *him* to be injured in *his* estate or lawful rights, . . . he shall be confined . . .' " [Emphasis supplied.]

It was there held that "another" includes the state.

In 23 Am Jur, Forgery, § 30, it is provided in part:

"Fraudulent intent is of the essence of forgery. . . . This intent may relate to a person not named in the instrument or to a state or county, even though the statute in terms refers to the prejudice of the rights of persons."

See also Luttrell v State, 85 Tenn 232, 1 SW 886 (1886); and Mays v State, 182 Tenn 316, 186 SW2d 334 (1945) ("another" in embezzlement statute includes the state).

In Easterday v United States, 292 Fed 664 (CA DC Cir) (1923), cert den 263 US 719, 44 S Ct 181, 68 L ed 523, the Court of Appeals for the District of Columbia construed their forgery statute, which provided in part as follows:

" 'Whoever, with intent to defraud or injure *another*, falsely makes or alters any writing of a public or private nature, which might operate to the prejudice of *another*, * * * shall be imprisoned,' . . ." [Emphasis supplied.]

After quoting from various authorities, the court concluded:

". . . It will be observed that neither the Code, Bishop, nor Clark requires that any one shall be actually defrauded, or that the accused shall have the intent to defraud any particular person. All that is required in that respect is that there be an intent to defraud some one."

Also appellant's contention overlooks the many cases which hold that, assuming the presence of the elements of forgery, the signing of a fictitious name, with fraudulent intent, is as much a forgery as if the name used was that of an existing person. Buckner v Hudspeth, 105 F2d 393 (CA 10th Cir) (1939); Milton v United States, 110 F2d 556 (CA DC Cir) (1940); Rowley v United States, 191 F2d 949 (CA 8th Cir) (1951). It is clear, therefore, that it is not necessary to name the persons in the indictment whom the accused intended to injure or defraud. Mas v United States, 151 F2d 32 (CA DC Cir) (1945), cert den 326 US 776, 66 S Ct 267, 90 L ed 469.

Appellant secondly contends that no legal liability was imposed on anyone

nor were the legal rights or liabilities of anyone changed to his prejudice. As to any rights of the Government, appellant denies their existence by virtue of the fact that he paid for the cigarettes received. The authorities plainly show, however, it is not necessary that anyone should have been injured or defrauded by the forged writing. See 37 CJS, Forgery, § 16, and cases cited. See also Easterday v United States, and Milton v United States, both supra. Forgery may injure a person in his personal as well as in his property rights. State v Webster, 88 SC 56, 70 SE 422 (1911). It is sufficient if there is intent to defraud someone by making or altering a writing which, if genuine, would apparently impose a legal liability on another or change his legal right or liability to his prejudice. Article 123 of the Code, supra.

In United States v Rubenstein, 7 USCMA 523, 22 CMR 313, the accused, a club manager, purchased whisky from an importer on the false representation that it was to be used in the normal operations of the club. He then proceeded to dispose of the liquor on the black market. We held the evidence sufficient to sustain a conviction of larceny by false pretenses, notwithstanding the fact that the seller suffered no pecuniary loss, since the seller bargained not only for the money but also for a legal sale which did not violate occupation and Japanese customs laws and regulations.

The accused herein, without the forged ration books, had no right to purchase cigarettes at the post exchange except such amounts as he was entitled to purchase with the ration book properly issued to him. The Government, on the other hand, had no obligation to supply him with the cigarettes. But within Article 123's definition, if the forged ration books were genuine, these rights and obligations would exist. Convictions for forgery will be upheld notwithstanding signatures forged are to unenforceable obligations. People v Gayle, 202 Cal 159, 259 Pac 750 (1927).

The answer would remain the same though it be contended the post exchange could refuse to sell the cigarettes even to one in possession of a valid ration book. In In re Benson, 34 Fed 649 (CC SD NY) (1888), affirmed 127 US 457, 8 S Ct 1240, 32 L ed 234, theater tickets were held to be the subject of forgery even though no consideration was recited and they did not contain a promise to admit the holders. Similarly, forged physicians' prescriptions for narcotics have been held subject to forgery even though a druggist may not have a legal obligation to fill the prescription. United States v Tommasello, 64 F Supp 467 (ED NY) (1946), affirmed 160 F2d 348 (CA 2d Cir) (1947); Johnson v Warden, 134 F2d 166 (CA9th Cir) (1943), cert den 319 US 763, 63 S Ct 1320, 87 L ed 1714; Hart v Squier, 159 F2d 639 (CA 9th Cir) (1947), cert den 331 US 815, 67 S Ct 1203, 91 L ed 1833; French v United States, 232 F2d 736 (CA 5th Cir) (1956), cert den 352 US 851, 77 S Ct 73, 1 L ed 2d 62.

In a New York case, decided more than a century ago, where the accused made a false letter, purporting to be from a third person to himself, in which a request was made that he ask his employer for a certain sum, to be expended for a purpose named, which letter the accused presented to his employer, and obtained the money, it was held he was guilty of forgery though such third person had no legal right to draw from the employer for money and such employer might have declined to furnish it even had the letter been genuine. People v Krummer, 1 Sheldon 549 (1854).

In United States v Addye, 7 USCMA 643, 23 CMR 107, where we held that a letter allegedly from the adjutant to a fiscal officer requesting that the accused be given a partial pay was the subject of forgery even though the fiscal officer was not bound to honor the request, we said in part:

". . . True, the fiscal officer is not bound to honor the request. Without it, however, the applicant for par-

600

tial pay has absolutely no standing. The letter, therefore, is not a mere request for a courtesy, but evidence of the satisfaction of a legal condition. It is an instrument which 'perfects' the accused's legal right to partial payment in advance of the time he would ordinarily be entitled to pay."

The instant case is very similar. Here, it is the forging of the ration books which "perfects" the accused's right to purchase cigarettes at the post exchange. Presentment of the ration book is a prerequisite to purchase. Therefore, here as in *Addye*, supra, the existence of the book is evidence of the satisfaction of the legal condition.

Other rights and liabilities could be affected by the forged ration card, if genuine. We are dealing here with a rationed commodity which authorized personnel are permitted to purchase in designated quantities. It is self-evident that each time an unauthorized purchase is consummated the supply available for legitimate sale is diminished. Someone, though he be unknown, suffers if supplies fail to meet authorized demands. On the other hand, if, by virtue of the unauthorized sales, the Government is required to transport additional quantities of cigarettes in order to meet legitimate demand, increased burdens are placed upon transportation facilities.

Frequently the major reason why such rationed commodities find their way to black market is the price differential between the local market and that which our servicemen must pay at a post exchange. An important factor in the price differential is often a tax concession made by agreement with the host country. Certainly, the host country would have a legitimate complaint if by flooding the market through unauthorized sales we produced adverse effects upon their tax structure or in any way violated existing agreements.

Finally, there is another who might suffer a legal liability had the ration books been genuine—that is the officer issuing or validating such books. Although it would be inconceivable to prefer any charges against one whose name was simply forged to the ration book, if the custodian of the ration books negligently or willfully permitted excessive ration books to get into circulation, he might leave himself open to a charge of dereliction of duty under Article 92(3), Uniform Code of Military Justice, 10 USC § 892.

Both issues having been decided in the affirmative, the decision of the board of review is affirmed.

Chief Judge QUINN concurs in the result.

LATIMER, Judge (concurring):

I concur. My views on the second issue are set out in my dissenting opinion in United States v Dozier, 9 USCMA 443, 26 CMR 223.